

**SIGNED this 31st day of August, 2010.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 09-12799-CAG |
| | § | |
| TERRY CHRISTOPHER BOUNDS | § | CHAPTER 7 |
| | § | |
| Debtor. | § | |

### ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO QUASH NOTICE OF RULE 2004 EXAMINATION

Came on to be considered the Motion to Quash filed on behalf of Segal McCambridge, Singer & Mahoney, Ltd. (docket #56), the Objection to Notice of Rule 2004 Exam and Motion to Quash Rule 2004 filed on behalf of Creditor HowryBreen, LLP (docket #57), and the Response to the motions filed on behalf of Creditor David Fernea (docket #80). Terry C. Bounds ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Bankruptcy Code on October 5, 2009. Subsequently, David Fernea ("Fernea") and the Chapter 7 Trustee ("Trustee") gave notice of 2004 examinations to attorneys with the law firms of Segal McCambridge and HowryBreen. These firms filed separate motions to quash the rule 2004

1

examination (docket # 56, 57). The Court finds that the motions should be granted in part, and denied in part. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157 and § 1334. This matter is a core proceeding pursuant to 28 U .S.C. § 157(b)(2)(A) on which this Court can enter a final judgment.

## BACKGROUND

The Debtor in this case is the former owner of Bounds and Pinto Marketing, Inc. and Austrends, Inc. ("the Corporations"). Prior to the filing of his bankruptcy petition, the Debtor was involved in extensive litigation in Travis County District Court, 250th and 345th Judicial District. That court determined that the Debtor violated the Texas Securities Act by selling unregistered securities to Fernea. The Debtor filed a voluntary bankruptcy petition for himself and the Corporations on October 5, 2009, immediately prior to the selection of a jury to determine whether the Debtor also engaged in statutory and common law fraud in his sale of securities to Fernea. Both Segal McCambridge and HowryBreen represented the Debtor and the Corporations during the state court proceeding. HowryBreen filed a motion to withdraw from representing the Debtor and the state court granted the motion.

After the Debtor filed his bankruptcy petition, this Court determined that the Debtor lacked the authority to place the Corporations into bankruptcy and that the Debtor filed the Corporations' bankruptcies in bad faith. The Corporations' shares (as owned by Bounds) subsequently became property of Debtor's estate and Fernea eventually purchased both of the Corporations by purchasing all of their shares. In addition, Fernea is a creditor of the Debtor in his current bankruptcy case.

Fernea made a written request for records from Segal McCambridge and HowryBreen, on the Corporations' behalf on January 15, 2010. HowryBreen refused to comply. The managing

2

partner for Segal McCambridge also refused, and asserted that his firm had not been involved in the matter since Timothy Herman, who had represented the Debtor and the Corporations, left their firm to join HowryBreen. Fernea subsequently gave the law firms notice of a Rule 2004 Examination. Segal McCambridge and HowryBreen responded by filing Motions to Quash (docket #56, 57).

## PARTIES' CONTENTIONS

Fernea contends that he is entitled to waive the attorney-client privilege with respect to the Corporations' confidential communications. He also argues that the attorney-client privilege is ineffective as to the Debtor's own confidential communications because of the exception to privilege for jointly represented parties who later become adverse. Fernea argues, alternatively, that the Trustee has the power to waive the privilege as to the Debtor's own communications. Moreover, Fernea contends that the Debtor waived privilege by publishing advice he received from his attorneys in a motion to retain counsel. Fernea also argues that he is entitled to documentation relevant to potential malpractice claims against Segal McCambridge and HowryBreen.

Conversely, HowryBreen and Segal McCambridge contend that the Corporations effectively asserted their attorney-client privilege. They also contend that the Debtor's assertion of attorney-client privilege is still effective because a trustee is not entitled to waive an individual debtor's privilege. The law firms also contend that many of the documents sought by Fernea are not discoverable because they are irrelevant.

## DISCUSSION

"An examination under Bankruptcy Rule 2004 is nonadversarial in nature and aimed at discovering evidence upon which future causes of action may be based and is therefore governed

by bankruptcy law rather than state substantive law." *In re North Plaza, LLC*, 395 B.R. 113, 122 (S.D.Cal. 2008). Moreover, privileges "'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997) (quoting Fed. R. Evid. 501). Thus, in the instant case, federal common law provides the applicable rules of privilege.

At the hearing on the motions to quash, Fernea argued that he has authority to waive the attorney-client privilege on behalf of the Corporations. The Court agrees. "The power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Further, the power to control the attorney-client privilege passes with the power to control the corporation. *Id.* at 349. In the instant case, the right to waive the Corporations' privilege passed to Fernea after he purchased the Corporations. Fernea now controls the Corporations as an officer and as the sole shareholder. Thus, because a corporation's current managers will control the privilege with respect to communications made by former management; this Court finds that Fernea is entitled to waive privilege with respect to confidential communications that the Debtor made on behalf of the corporations. *Id.*

Fernea's access to the Corporations' documents will be limited, however. A client's ownership of the contents of his attorney's file is a matter of state law. *See Resolution Trust Corp. v. H----, P.C.*, 128 F.R.D. 647, 648 (N.D.Tex. 1989). When an attorney creates documents on behalf of a client, they generally belong to the client. *In re George*, 28 S.W.3d 511, 516 (Tex. 2000). A client's right to his attorney's file is not absolute, however. *Id.* The court can deny a client access to the work product of his attorney, if such documents contain the

confidential information of another. *Id.*

In the instant case, this Court finds that Fernea is not entitled to the work product generated on behalf of the Corporations insofar as it contains the Debtor's own confidential information. Handing over all the work product of the Corporations, for whom the Debtor once served as an officer, would almost certainly result in a disclosure of the Debtor's own confidential information. This is especially true because the Debtor and the Corporations were represented by the same counsel throughout the course of the state court proceedings. Nevertheless, Fernea is entitled to any of the Corporations' work product that is routine or that does not contain the Debtor's own confidential information.

Fernea also argued that the Debtor's personal communications are not protected by the attorney-client privilege because the exception to privilege for formerly co-represented parties that later become adverse to one another is applicable on the facts of the instant case. The Court disagrees.

Communications made by members of a group of clients and concerning a matter of common interest are generally subject to the attorney-client privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992). The attorney-client privilege can, however, be waived as to confidential 'common-interest' communications, if the clients who jointly sought counsel later become adverse to one another. *See In re Mirant*, 326 B.R. 646, 649 (Bkrtcy.N.D.Tex. 2005). In *Mirant*, the court dealt with corporations that were formally in a parent-subsidiary relationship and represented by the same attorney. *Id.* at 648. In determining that the former parent corporation could not assert privilege against a request for discovery by the former subsidiary, the court noted that, "[i]t is well established that, in a case of joint representation of two clients by an attorney, one client may not invoke the privilege against the other client *in litigation*

5

*between them* arising from the matter in which they were jointly represented." *Id*. at 649 (emphasis added) (citing ***Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re Hechinger Inv. Co. of Del.***, 285 B. R. 601,612 (D.Del. 2002) ("Generally, where the same lawyer jointly represents two clients with respect to the same matter, the clients have no expectation that their confidences . . . will remain secret from each other, and those confidential communication [sic] are not within the privilege in subsequent adverse proceedings between the co-clients."))

Here, the Debtor and the Corporations were jointly represented; however, Fernea and the Debtor have never been any attorney's co-clients. Because a corporation is a client for the purpose of invoking the attorney-client privilege, **Garner v. Wolfinbarger**, 430 F.2d 1093, 1097 (5th Cir. 1970), it stands to reason that corporations themselves, rather than their current managers, are the parties to be considered when determining whether an exception to that privilege applies. In this case, there is no litigation pending between the Debtor and the Corporations. Although Fernea suggests that the Debtor's improper placement of the Corporations into bankruptcy created adversity, the Court declines to extend the exception under the circumstances of this case. Additionally, the Court notes that the Corporations are no longer in bankruptcy. Consequently, because no actual adversity between the Debtor and the Corporations exists, the adversity exception to the attorney-client privilege doctrine is not applicable.

Fernea and the Trustee also argue that the Trustee has the power to waive the Debtor's attorney-client privilege. While the Supreme Court has held that a trustee in bankruptcy is entitled to waive a *corporate* debtor's attorney-client privilege, it specifically declined to address whether or not a trustee could waive privilege on behalf of an individual debtor. **Weintraub**, 471

U.S. at 356, 358. It also suggested that the rationale for its decision would not be applicable in the context of an individual bankruptcy because, "an individual . . . can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege. If control over that privilege passes to a trustee, it must be under some theory different from the one we embrace in this case." *Id.* at 356-57.

Courts have adopted three distinct approaches to the problem of whether a trustee can waive an individual debtor's attorney-client privilege. According to the first approach, the right to waive the attorney-client privilege of an individual debtor passes to the bankruptcy trustee by operation of law. *In re Smith*, 24 B.R. 3, 5 (Bkrtcy.Fla. 1982). Under the second, a trustee may not waive an individual debtor's attorney-client privilege. *In re Hunt*, 153 B.R. 445, 454 (Bkrtcy.N.D.Tex. 1992). Finally, some courts have applied a functional approach which balances the equities and weighs the trustee's need for the information against the harm disclosure would cause to the debtor. *In re Miller*, 247 B.R. 704, 710 (Bankr.N.D. Ohio 2000).

This Court finds that the best approach is the one that denies a trustee the right to waive an individual debtor's attorney-client privilege. In the absence of clear guidance from the Bankruptcy Code, the rights of a debtor in bankruptcy must be determined by analogizing them to the rights the debtor could exercise outside of bankruptcy. *Weintraub,* 471 U.S. at 351. Under this analysis, a trustee can waive a corporation's attorney-client privilege because in a corporate bankruptcy, he controls the corporation much as the corporation's management would pre-petition. The role of a trustee in an individual bankruptcy is significantly different. *Weintraub*, 471 U.S. at 352-53. In an individual bankruptcy:

> The trustee . . . does not control the individual himself; he cannot force the individual debtor to do anything the individual debtor does not wish to do. The trustee in effect, has no more control over the activities of an individual debtor than does a person who has purchased all of that person's assets. The mere

7

>transfer of assets from one person to another does not entail the transfer of the individual's attorney-client privilege as well.

*In re Hunt*, 153 B.R. at 453.

The trustee in an individual bankruptcy has no managerial role with respect to the individual debtor and thus allowing him to waive the individual's attorney-client privilege is not justified under the Supreme Court's holding in ***Weintraub***. Moreover, the adoption of either of the other two approaches would undermine the policy served by the attorney-client privilege, namely, the promotion of candor in the attorney-client relationship. For the foregoing reasons, the Trustee is not entitled to waive the attorney-client privilege on behalf of the Debtor in the instant case.

Additionally, Fernea asserts that even if the attorney-client privilege was applicable to the personal communications of the Debtor, the Debtor waived his privilege by disclosing the substance of communications between the Debtor and his former attorneys in a motion to retain counsel. The Court disagrees. "Where the attorney-client privilege exists, it protects communications from [the] client to the attorney made in confidence for the purpose of obtaining legal advice." ***Wells v. Rushing***, 755 F.2d 376 (5th Cir. 1985). Conversely, a disclosure of communications made by an attorney to a client will not result in a waiver. ***Industrial Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.***, 953 F.2d 1004 (5th Cir. 1992). In his Motion to Retain Counsel, the Debtor contended that his former attorneys made the following statements:

>(1) That he and his wife should file for personal bankruptcy protection and put the Corporations into bankruptcy.
>
>(2) That he should defend himself in the state court proceeding.
>
>(3) That members of the law firm would continue to represent him, whatever the outcome might be; and

8

>  (4) That he was only obligated to pay expenses incurred in representation and that counsel would collect the balance of their fees from the counterclaim against Fernea.

Fernea's claim that the Debtor waived his attorney-client privilege by making the above statements in a motion to retain counsel is without merit. Each of the listed communications consists of advice or information flowing from the attorneys to the Debtor. The attorney-client privilege does not protect such communications, as they are not confidential in nature. Thus, in the instant case, the Court finds that the disclosure of advice the Debtor received *from* his counsel does not act as a waiver of his attorney-client privilege.

Finally, Fernea and the Trustee seek discovery they assert would be relevant to potential malpractice claims against HowryBreen and Segal McCambridge. Among other things, they have asked for documents that they believe may evidence an agency relationship between Segal McCambridge and Mr. Timothy Herman at the time Herman jointly represented the Debtor and the Corporations. HowryBreen and Segal McCambridge deny that the documents are relevant and contend that they are not discoverable. The Court finds otherwise.

Courts have suggested that the scope of a Rule 2004 examination is broad, several likening it to a "fishing expedition." ***In re Table Talk, Inc.***, 51 B.R. 143 (Bankr.D.Mass. 1985); ***Matter of Wilcher***, 56 B.R. 428 (Bankr.N.D.Ill. 1985); ***In re GHR Energy Corp.***, 33 B.R. 451 (Bankr.D.Mass. 1983). The rule itself provides in relevant part that "[t]he examination . . . of a debtor under § 343 of the Code may relate only to the acts, conduct, or property or to the liabilities and financial condition of the Debtor, or to any matters which may affect the administration of the debtor's estate . . . ." Fed. R. Bankr. P. 2004 (b).

The Court finds that documents concerning potential malpractice actions against HowryBreen and Segal McCambridge concern the financial condition of the Debtor, and may affect the administration of the Debtor's estate. Both law firms are creditors of the estate. Any judgment obtained against the firms would reduce the amount of their claims against the debtor, increasing the amount to which other unsecured creditors would be entitled. Therefore, documents relating to the potential malpractice claims fall within the scope of Rule 2004.

IT IS THEREFORE ORDERED that Fernea's motion to compel compliance with a Rule 2004 Examination be granted in part and denied in part. The motion is granted as to those of the Corporations' files that do not contain the Debtor's own confidential information. The motion is also granted as to documents concerning potential malpractice claims against HowryBreen and Segal McCambridge. The motion is denied, however, as to documents containing the Debtor's own confidential information, which are protected by the attorney-client privilege. The Court will conduct an *in camera* review if no agreement can be reached as to the categorization of particular documents.

# # #